T.C. Memo. 1996-181


UNITED STATES TAX COURT


ESTATE OF WILLIAM F. LUTON, DECEASED, NANCY L. JACKSON, ROBERT S.
HERDMAN, AND WILLIAM F. LUTON, JR., CO-EXECUTORS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent*


Docket No 23339-91.                    Filed April 15, 1996.


    Richard J. Sideman and Wendy Abkin, for petitioner.

    Cynthia K. Hustad, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION


    Parr, Judge:  The opinion in this case, T.C. Memo. 1994-539,

was filed on October 27, 1994.  In that opinion, we determined

the value of certain property includable in petitioner's gross

    *    This memorandum opinion supplements Estate of Luton v.
Commissioner, T.C. Memo. 1994-539.

estate for Federal estate tax purposes.  Furthermore, we held
that petitioner was not liable for an addition to tax for
undervaluation pursuant to section 6660.[1]  We directed the
parties to submit computations pursuant to Rule 155.

On October 20, 1995, respondent filed her Rule 155
computations for entry of decision.  On November 20, 1995,
petitioner filed its Rule 155 Computation.  Both parties filed
memoranda in support of their Rule 155 computations and in
support of their objections to the other party's Rule 155
computations.  Petitioner also filed a response to respondent's
memorandum.  Hereinafter, the parties' Rule 155 computations and
memoranda in support thereof will be referred to as petitioner's
or respondent's Rule 155 computation, as the context requires.

Prior to the trial of this case, the parties filed a
stipulation of partial agreement (SPA) containing nine numbered
paragraphs.  The SPA reflected the parties' agreement as to a
number of issues relating to adjustments to the gross estate,
estate deductions, and adjusted taxable gifts to be incorporated
in the computation of petitioner's estate tax deficiency, if any,
for entry of decision by the Court.

In the notice of deficiency, inter alia, respondent
determined an adjustment to the value of the decedent's stock

---

[1]     All section references are to the Internal Revenue Code
in effect as of the date of decedent's death, and all Rule
references are to the Tax Court Rules of Practice and Procedure,
unless otherwise indicated.

interest in Dune Lakes, Ltd. (Dune Lakes).[2]  Another adjustment

related to an account receivable due the decedent from Dune

Lakes.  Paragraphs 2 and 4 of the SPA address these adjustments.

Paragraph 2 provides:

> That the value of the underlying real estate assets of
> Dune Lakes, Ltd. (adjustment b in the notice of deficiency
> for the tax year ending April 27, 1987) is determined to
> be $4,800,000.00 without consideration of any discounts, if
> applicable.  The amount of any discounts is still in
> dispute.
> The parties agree that the amount of $671,688.00 shown
> on the books of Dune Lakes, Ltd. for the year ending
> December 31, 1987, as loans from stockholders will be
> disregarded for purposes of valuing the stock and assets of
> Dune Lakes, Ltd.

Paragraph 4 provides:

> That of the adjustment of $83,961.00 for Schedule C -
> Mortgages, Notes and Cash (adjustment c in the notice of
> deficiency for the tax year ending April 27, 1987),
> Respondent concedes $164,436.00 of the adjustment - Item
> 27(a) Dune Lakes Limited, and $1,743.00 of the adjustment -
> Item 27(a) "Open book account".  Petitioners make no
> concessions.  There is no amount left in dispute.

The parties' memoranda in support of their respective Rule

155 computations incorporate the SPA and the issues decided by

the Court in T.C. Memo. 1994-539.  However, the parties failed to

agree as to how two of the issues, agreed to in the SPA, were to

be reflected in the calculations of petitioner's estate tax

liability for the years at issue.  The parties, therefore, filed

---

[2]     The valuation of Dune Lakes was at issue and was
addressed in our prior memorandum opinion.  Accordingly, for
factual background relating to the corporation see T.C. Memo.
1994-539.

the instant motions for entry of decision based on their respective interpretations of the terms of the SPA.

Discussion

The two areas of disagreement[3] involve (1) computations relating to deductions for administrative expenses, and (2) the proper interpretation of paragraphs 2 and 4 of the SPA.

Computations Relating to Administrative Expenses

The parties' dispute involves certain deductions for administrative expenses. Petitioner asserts that the Rule 155 computation should include deductions for statutory attorneys' fees and commissions, additional attorneys' fees and executor's fees awarded by the probate court, interest on California estate tax, and interest on Federal estate tax. In respondent's Rule 155 computation, these items were not included due to lack of substantiation.

In respondent's Rule 155 computation, she makes a number of concessions relating to the aforementioned items. Her concessions recognize that petitioner has substantiated the amounts claimed or that petitioner is entitled to deductions if, and when it substantiates the amounts. Accordingly, to the extent petitioner can provide substantiation, we hold that such

---

[3]    In petitioner's memorandum in objection to respondent's Rule 155 computation, it asserts that its payment of its estate taxes was timely made pursuant to sec. 7502. Respondent concedes that the return was filed and the tax was paid timely. Accordingly, there is no issue before the Court in that respect.

amounts are to be allowed as deductions in the Rule 155 computation.

Interpretation of SPA

The parties' dispute relates to a loan amount due the decedent from a related corporation, Dune Lakes. The parties addressed this issue in paragraphs 2 and 4 of the SPA. Petitioner argues that, in the notice of deficiency, respondent treated the receivable inconsistently. That is, the amount of the loan was disregarded for purposes of valuing the Dune Lakes stock (i.e., the liability did not reduce the net asset value of Dune Lakes); however, the amount was included in valuing the decedent's receivables. Petitioner argues that paragraphs 2 and 4 of the SPA resolved the inconsistency. Respondent contends that paragraph 2 addressed only the valuation of Dune Lakes and the treatment of the loans to the corporation for purposes of valuing the stock of the corporation. Respondent asserts that paragraph 4 is merely a compromise that has the effect of conceding only a part of the account receivable amount.

A settlement stipulation is a contract. Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436 (1969); Smith v. Commissioner, T.C. Memo. 1991-412. General principles of contract law are applied in construing a settlement agreement. United States v. ITT Continental Baking Co., 420 U.S. 223, 238 (1975). This Court has held that a settlement agreement is

binding in the absence of fraud, misrepresentation, or mutual

mistake of fact.  Spector v. Commissioner, 42 T.C. 110, 113

(1964); Saigh v. Commissioner, 26 T.C. 171, 177, 180 (1956).  In

describing a settlement agreement we have stated that:

> A settlement [agreement] is usually a compromise, and the
> mere fact that [one of the parties] now feels more confident
> about some point or points that he did not insist upon in
> first determining and later stipulating these particular
> deficiencies is not sufficient grounds for avoiding the
> settlement agreement. * * * [A] settlement stipulation is in
> all essential characteristics a mutual contract by which
> each party grants to the other a concession of some rights
> as a consideration for those secured and the settlement
> stipulation is entitled to all the sanctity of any other
> contract. * * * [Saigh v. Commissioner, supra at 177;
> citations omitted.]

When an agreement is ambiguous, however, we may look to

extrinsic evidence to determine the parties' intentions.  Woods

v. Commissioner, 92 T.C. 776 (1989).  In Constitution Pub. Co. v.

Commissioner, 22 B.T.A. 426, 428 (1931), the Board defined

ambiguity and set forth the applicable law concerning ambiguous

contracts as follows:

> if the expression used and the language of the instrument is
> merely ambiguous, the rules of construction with respect to
> doubtful or ambiguous contracts or documents are applicable
> here.  Upon this ground we have the right and it is our duty
> to determine what * * * the parties intended by the
> expression used.  An instrument is clearly ambiguous and is
> open to construction when its words, taken literally, lead
> to absurdity or have no meaning or when two meanings could
> be given. * * * It is a primary rule of construction of
> documents that the Court must if possible ascertain and give
> effect to the mutual intention of the parties and in doing
> this greater regard is to be had to the clear intent of the
> parties than to any particular words which they may have
> used in the expression of their intent. * * * [Citations
> omitted.]

Petitioner contends that if the Dune Lakes receivable is treated as a receivable includable in the estate, then it must be treated as a payable in determining the net asset value of Dune Lakes. However, if the receivable is treated as a capital contribution, and therefore not included in the net asset value of Dune Lakes, then it must not be includable as a receivable in the estate. Petitioner contends that paragraph 2 of the SPA settled part of the issue by providing that the receivable will be disregarded for purposes of valuing the stock of Dune Lakes (i.e., will be treated as a capital contribution) and will not reduce the net asset value of the corporation. Petitioner further contends that the remaining part of the issue was resolved in paragraph 4 of the SPA. Petitioner claims that it understood the language in paragraph 4 "as the logical and necessary mirror of the language of paragraph 2" (i.e., the loan would be disregarded for purposes of valuing the decedent's receivables).

Respondent agrees with petitioner's interpretation of paragraph 2 but she notes that, by its terms, paragraph 2 addressed only the valuation of Dune Lakes, and the treatment of the loans to the corporation for purposes of valuing the stock of the corporation. Respondent contends that paragraph 4, by its terms, merely compromises the adjustment made in the notice of deficiency. Moreover, respondent contends that the adjustment in the notice of deficiency related only to amounts taken as

marketability and collectability discounts ($82,218 relating to a receivable in the amount of $164,436, and $1,743 relating to an open book receivable in the amount of $3,485). Respondent argues that the amounts of the receivables, for purposes of valuing the receivables, were never put in issue. Therefore, respondent argues that paragraph 4 did not necessarily relate to paragraph 2. Respondent further asserts that her Appeals officer had the primary responsibility for negotiating the settlement of the adjustments in the SPA, and it is clear from his notes, that the settlement in paragraph 4 was not directly related to the settlement in paragraph 2.[4]

Notwithstanding respondent's assertions, we find paragraph 4 to be ambiguous. First, the amount of the concession is more than respondent's adjustment in the notice of deficiency. Second, the language in paragraph 4 which provides that "petitioners make no concessions" and that "there is no amount left in dispute" makes the stipulation ambiguous. Moreover, it seems reasonable to us that the loan amount reflected as a payable in determining the net asset value of Dune Lakes and as a receivable to the decedent would be treated consistently by the

---

[4]    Respondent asserts that the agent's notes, dated June 19, 1995, state "propose 50/50 on Dune Lakes Receivables", which corresponds to a 50/50 split of the Dune Lakes receivables in excess of the $82,218.00 already conceded (½ ($246,654-$82,218) or $82,218). This would result in a total concession by respondent of $164,436.00 ($82,218.00 + $82,218.00). The purported notes are not part of the record. Furthermore, petitioner disputes any agreement to a 50-percent concession.

parties for purposes of valuing the assets of the estate. Furthermore, we note that the general contract principle of contra proferentem weighs against respondent in this case. The principle states that an ambiguous provision in a written document is construed more strongly against the person who selected the language. <u>Rink v. Commissioner</u>, 100 T.C. 319, 328 (1993) n.8; see e.g., <u>United States v. Seckinger</u>, 397 U.S. 203, 216 (1970).

Accordingly, we conclude that paragraphs 2 and 4 of the SPA should be interpreted consistently with one another. Therefore, we hold that the Rule 155 computation shall be computed so that the receivable amounts relating to the advances to Dune Lakes by the decedent are not includable in the estate.

To reflect the foregoing,

<u>Decision will be entered in</u> <u>accordance with the parties'</u> <u>Rule 155 computation as revised to</u> <u>conform with this opinion.</u>